## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PENNY BECHDEL,** | : | **Civil No. 1:19-CV-00584** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | **(Chief Magistrate Judge Schwab)** |
| **ANDREW SAUL**[1] | : | |
| **COMMISSIONER** | : | |
| **OF SOCIAL SECURITY** | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION AND ORDER
July 27, 2020

### I.     Introduction.

The plaintiff, Penny Bechdel, seeks judicial review of the final decision of

the Commissioner of Social Security ("Commissioner") denying her claims for

Disability Insurance Benefits and Supplemental Security Income under Titles II

and XVI of the Social Security Act.  We have jurisdiction under 42 U.S.C.

§§ 405(g) and 1383(c)(3).  For the reasons that follow, we conclude that the

Commissioner's decision is supported by substantial evidence.  Thus, we affirm

the Commissioner's decision.

---

[1] In accordance with Fed.R.Civ.P. 25(d) and 42 U.S.C. § 405(g), Commissioner
Andrew Saul is automatically substituted as the named defendant in place of the
former Commissioner of Social Security.

## II.  Background and Procedural History.

We refer to the transcript provided by the Commissioner. *See docs. 8-1* to *8-22*.[2]  On June 3, 2016, Ms. Bechdel filed an application for disability insurance benefits. *Admin Tr.* at 179-193.  And on June 6, 2016, she filed an application for supplemental security income benefits. *Id.*  Ms. Bechdel's alleged onset date of disability is June 30, 2014. *Id.* at 204.  After the Commissioner denied Ms. Bechdel's claim at the initial level of administrative review, Ms. Bechdel requested an administrative hearing. *Id.* at 158-160.  On May 2, 2018, with the assistance of counsel, she testified at a hearing before Administrative Law Judge ("ALJ") Daniel Balutis. *Id.* at 12-33.

The ALJ determined that Ms. Bechdel was not disabled from June 30, 2014, through December 31, 2015, her date last insured,[3] and so he denied her benefits. *Id.* at 16.  Ms. Bechdel appealed the ALJ's decision to the Appeals Council, which denied her request for review on February 2, 2019. *Id.* at 1-6.  This makes the

---

[2] Because the facts of this case are well known to the parties, we do not repeat them here in detail.  Instead, we recite only those facts that bear on Ms. Bechdel's claim.

[3] "The last date that an individual meets the requirements of being insured is commonly referred to as the 'date last insured.'" *Jury v. Colvin*, No. 3:12-CV-2002, 2014 WL 1028439, at *1 n.5 (M.D. Pa. Mar. 14, 2014) (citing 42 U.S.C. § 416(i)(2)).  Here, the ALJ determined that Ms. Bechdel met the insured-status requirements through December 31, 2015, her date last insured. *Admin. Tr.* at 16.

ALJ's decision the final decision of the Commissioner subject to judicial review by this Court.

In April of 2019, Ms. Bechdel began this action by filing a complaint requesting that the Court reverse the ALJ's decision or, in the alternative, remand the case to the Commissioner for a new hearing. *Doc. 1*.  The Commissioner filed an answer and a certified transcript of the administrative proceedings. *Docs. 7, 8*. The parties then consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned. *Doc. 12*. The parties filed briefs, and this matter is ripe for decision. *Docs. 15, 16*.

## III.  Legal Standards.

### A. Substantial Evidence Review—the Role of This Court.

When reviewing the Commissioner's final decision denying a claimant's application for benefits, "the court has plenary review of all legal issues decided by the Commissioner." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). But the court's review of the Commissioner's factual findings is limited to whether substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019).  "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.  Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).  A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).  But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's] finding from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).  "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D. Pa. 2003).

The question before this Court, therefore, is not whether Ms. Bechdel was disabled, but whether substantial evidence supports the Commissioner's finding that she was not disabled and the Commissioner correctly applied the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F.Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v.*

4

*Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F.Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

## B.  Initial Burdens of Proof, Persuasion, and Articulation for the ALJ.

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505(a), 416.905(a).

To receive disability insurance benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).  Unlike with disability insurance benefits under Title II of the Social Security Act, "[i]nsured status is

irrelevant in determining a claimant's eligibility for supplemental security income benefits" under Title XVI of the Social Security Act. *Snyder v. Colvin*, No. 3:16-CV-01689, 2017 WL 1078330, at \*1 (M.D. Pa. Mar. 22, 2017).  Supplemental Security Income "is a federal income supplement program funded by general tax revenues (not social security taxes)" "designed to help aged, blind or other disabled individuals who have little or no income." *Id.*

In determining whether the claimant is disabled, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a).  Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience, and residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

At step four, the ALJ must also assess a claimant's RFC. *See Hess v. Comm'r Soc. Sec.,* 931 F.3d 198 n.2. (3d Cir. 2019).  RFC is "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir.

2000) (citations omitted); *see also* 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1).  In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairment identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her from engaging in any of his or her past relevant work. 42 U.S.C. §§ 423(d)(5), 1382c(a)(3)(H)(i) (incorporating 42 U.S.C. § 423(d)(5) by reference); 20 C.F.R. §§ 404.1512, 416.912; *Mason*, 994 F.2d at 1064.  Once the claimant meets this burden, the burden shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform and that are consistent with the claimant's age, education, work experience, and RFC. 20 C.F.R. §§ 404.1512(f), 416.912(f); *Mason*, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites.  Most significantly, the ALJ must provide "a clear and satisfactory explication of the basis on which" his or her decision rests. *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  "The ALJ must indicate in his decision which

evidence he has rejected and which he is relying on as the basis for his finding."
*Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F. 3d 429, 433 (3d Cir. 1999). The
"ALJ may not reject pertinent or probative evidence without explanation." *Johnson
v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008).  Otherwise, "'the
reviewing court cannot tell if significant probative evidence was not credited or
simply ignored.'" *Burnett*, 220 F.3d at 121 (quoting *Cotter*, 642 F.2d at 705).

## IV.  The ALJ's Decision Denying Ms. Bechdel's Claim.

On May 21, 2018, the ALJ denied Ms. Bechdel's claim for benefits.
Applying the sequential-evaluation process, the ALJ determined that Ms. Bechdel
was not disabled within the meaning of the Social Security Act.  The ALJ found
that Ms. Bechdel met the insured status requirements of the Social Security Act
through December 31, 2015 (her date last insured). *Admin. Tr.* at 17.

At step one of the sequential-evaluation process, the ALJ found that Ms.
Bechdel had not engaged in substantial gainful activity since June 30, 2014, the
amended alleged onset date. *Id.*

At step two of the sequential-evaluation process, the ALJ found that Ms.
Bechdel had the following severe impairments: type 2 diabetes mellitus with
neurological manifestations; right index trigger finger, status post release of A1

pulley, right long finger; lumbosacral degenerative disc disease; obesity; and (post-date last insured) chronic kidney disease, stage 3 (moderate). *Id.* at 18.  The ALJ determined that these "impairments significantly limit Ms. Bechdel's ability to perform basic work activities as required by SSR 85-28." *Id.*  He also determined that Ms. Bechdel had hyperlipidemia, vitamin D deficiency, and (post-date last insured) acute cystitis, but because these impairments do not cause any work-related limitations, he considered them to be non-severe impairments. *Id.*  Relying on a State agency psychological consultation, the ALJ also determined that Ms. Bechdel does not have any medically determinable mental impairments. *Id.*

At step three of the sequential-evaluation process, the ALJ found that Ms. Bechdel did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*  The ALJ "specifically considered Listing 1.04 (Disorders of the Spine), and 6.05 (Chronic Kidney Disease with Impairment of Kidney Function), and 11.14 (Peripheral Neuropathy). *Id.*  But he determined that Ms. Bechdel did not meet any of these listings. *Id.*  Additionally, the ALJ considered Ms. Bechdel's obesity and diabetes mellitus and the effects they have on her existing impairments. *Id.* at 19.

At step four of the sequential-evaluation process, the ALJ assessed Ms.

Bechdel's RFC.  The ALJ determined that Ms. Bechdel has the RFC to perform

light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b), except:

> She can climb ramps and stairs frequently, but she can never
> climb ladders, ropes, or scaffolds. She can balance and stoop
> frequently, but can never crawl. She can work at unprotected
> heights frequently. She can have frequent exposure to
> unprotected heights, moving mechanical parts, humidity, and
> wetness, extreme cold, and vibration.

*Id.*

In making this RFC assessment, the ALJ found that Ms. Bechdel's

medically determinable impairments could reasonably be expected to cause her

alleged symptoms; however, the ALJ also found that Ms. Bechdel's statements

regarding the intensity, persistence, and limiting effects of these symptoms were

not entirely consistent with the record's medical and other evidence. *Id.* at 21.

The ALJ considered Ms. Bechdel's testimony regarding the impact of the

need to use a cane.  Ultimately, the ALJ concluded that a cane is not medically

necessary for Ms. Bechdel to ambulate, and he decided to exclude a cane provision

in the RFC. *Id.*  Regarding Ms. Bechdel's cane, the ALJ considered the medical

evidence, including a consultative report from Justine Magurno, M.D. *Id.*  Dr.

Magurno reported that Ms. Bechdel's gait is slightly left antalgic, and it is not

affected by a cane. *Id.*  Additionally, the ALJ relied on the assessment of Dr.

Chung, the state agency medical consultant.  Dr. Chung's report did not include any provision that Ms. Bechdel requires a cane for ambulation. *Admin. Tr.* at 133-144.  The ALJ relied on both of these reports to conclude that Ms. Bechdel did not require a cane to ambulate because "the longitudinal evidence of record, including Dr. Magurno's physical exam findings, support that conclusion." *Admin. Tr.* at 21-22.

The ALJ also considered the RFC in Ms. Bechdel's prior unfavorable decision from ALJ Wing.[4] *Id.* at 22.  There, ALJ Wing did not include a cane provision, citing to a July 2013 physical examination, which showed that Ms. Bechdel was capable of walking without the use of an assistive device. *Id.*  The ALJ considered ALJ Wing's decision to be noteworthy because "the subsequent evidence from after Judge Wing's prior decision does not demonstrate an appreciable decline in the claimant's condition such that a cane would now be required for ambulation." *Id.*

The ALJ further considered Ms. Bechdel's evidence regarding her frequent use of a prescribed cane, even acknowledging that a new cane was prescribed

---

[4] On November 20, 2013, Ms. Bechdel received an unfavorable decision from ALJ Wing regarding her benefits claim. *See Admin. Tr.* at 22.  Ms. Bechdel requested review of ALJ Wing's decision, but the Appeals Council denied her request for review on March 17, 2015. *Id.*

because her old cane broke. *Id.*  The ALJ found that a new cane was prescribed to

Ms. Bechdel only because she asked for it when her old cane broke, and not

because the doctor determined it was medically required. *Id.*  The ALJ noted that

"given the other evidence, as discussed herein, especially the consultative

examiner's opinion, I do not find the evidence so compelling as to include a cane

provision in the RFC." *Id.*  The ALJ also considered a "check-the-box-type"

medical-source statement from Ms. Bechdel's family physician, Dr. Carrie Timko.

*Id.*; *see also Admin. Tr.* at 473.  This form also failed to note that a cane was

medically necessary for Ms. Bechdel to ambulate. *Id.*

Based on a March 24, 2014 endocrinology office visit, the ALJ noted that

Ms. Bechdel had become more active since getting a puppy. *Id* at 22.  Based on a

September 24, 2014 endocrinology office visit note, the ALJ noted that Ms.

Bechdel "attributes her improved A1c to having a dog and being more active." *Id.*

A note from a July 16, 2015 family practice office visit indicated that Ms. Bechdel

frequently lifted her grandson during his toilet training. *Id.* at 22-23.  Additionally,

a December 29, 2016 family practice office note shows that Ms. Bechdel babysits

her grandchildren. *Id.* at 23.  The ALJ found this information to contradict what

was reported in Ms. Bechdel's function report, where Ms. Bechdel indicated that

she does not take care of anyone else, including her grandchildren and her dog. *Id.*

The ALJ also considered Ms. Bechdel's type 2 diabetes mellitus with neurological manifestations. *Id.* Ultimately, the ALJ relied on notes from a December 29, 2016 and a May 10, 2016 family practice visit that indicated that Ms. Bechdel's type 2 diabetes mellitus with diabetic polyneuropathy is "fair[ly] controlled" and "stable." *Id.* at 23-24. The ALJ noted that Dr. Magurno's assessment of Ms. Bechdel concluded that despite the diabetic neuropathy causing burning in her toes, stinging, and numb feelings, there was no medical need for a cane to ambulate. *Id.* at 24. Additionally, the ALJ noted that Dr. Magurno concluded that Ms. Bechdel's strength was normal and there was no evident muscle atrophy, and she is capable of standing and rising from a chair. *Id.*

Relying on Dr. Magurno's report, the ALJ found that Ms. Bechdel could "lift/carry 20 pounds occasionally and 10 pounds continuously." *Id.* at 25. The ALJ also gave considerable weight to the opinion of Dr. Chung, who concurred that Ms. Bechdel could lift/carry 20 pounds occasionally and 10 pounds frequently. *Id.* Regarding Ms. Bechdel's ability to continuously sit, the ALJ relied on Dr. Magurno's report, which holds that Ms. Bechdel can sit for 3 hours in 30-minute intervals, stand for 3 hours in 30-minute intervals, and walk for 3 hours in 30-minute intervals throughout an 8-hour workday. *Id.* at 25-26.

In his conclusion regarding Ms. Bechdel's RFC assessment, the ALJ stated:

13

In sum, the above residual functional capacity assessment is
supported by the claimant's course of treatment and the nature
and effectiveness of that treatment, the longitudinal physical
examination findings, the claimant's activities of daily living,
and the persuasive opinion evidence of record.

The claimant is capable of doing a range of light work [5] on a
regular, sustained, and continuing basis despite the limitations
resulting from her impairments.

*Id.* at 26.

At step four of the sequential-evaluation process, the ALJ found that Ms.

Bechdel could perform her past relevant work as a deli associate (as actually

performed and as generally performed) and as a people greeter (as actually

performed). *Id.* at 27.  The ALJ relied on the vocational expert's description of the

two positions. *Id.*  Regarding the deli-associate position, the vocational expert

testified that it is a light duty unskilled job as generally performed, and it is a light

duty position as actually performed based on Ms. Bechdel's description. *Id.*  For

---

[5] *See* 20 C.F.R. § 404.1567(b) ("Light work involves lifting no more than 20
pounds at a time with frequent lifting or carrying of objects weighing up to 10
pounds.  Even though the weight lifted may be very little, a job is in this category
when it requires a good deal of walking or standing, or when it involves sitting
most of the time with some pushing and pulling of arm or leg controls.  To be
considered capable of performing a full or wide range of light work, you must have
the ability to do substantially all of these activities.  If someone can do light work,
we determine that he or she can also do sedentary work, unless there are additional
limiting factors such as loss of fine dexterity or inability to sit for long periods of
time.").

the people-greeter position, the vocational expert found that it is a medium duty

unskilled position as generally performed, and it is a light duty position as actually

performed based on Ms. Bechdel's description. *Id.*  The ALJ relied on the

vocational expert's testimony regarding a hypothetical individual with the same

limitations as he set forth in Ms. Bechdel's RFC.  The vocational expert testified

that the individual would be able to perform the deli-associate position as actually

performed and as generally performed. *Id.*  Additionally, the vocational expert

testified that such a hypothetical individual could also perform the people-greeter

position as actually performed only. *Id.*

At step five of the sequential-evaluation process, considering Ms. Bechdel's

age, education, work experience, and RFC, as well as the testimony of the

vocational expert, the ALJ found that there were other jobs–such as warehouse

checker, inserter, and counter clerk–that exist in significant numbers in the national

economy that Ms. Bechdel could perform. *Id.* at 28-29.

In sum, the ALJ concluded that Ms. Bechdel was not disabled from June 30,

2014, the amended alleged onset date, through the date of his decision on May 21,

2018. *Id.* at 29-30.

**V. Discussion.**

Ms. Bechdel claims that the ALJ's finding that she did not medically require a cane to ambulate was not based on substantial evidence.  She claims that including the cane into the RFC assessment would result in a finding that she is disabled, and she claims that if the ALJ relied on substantial evidence, he would have included Ms. Bechdel's cane into the RFC assessment.  We conclude that the ALJ did not err and that his decision is supported by substantial evidence.

The ALJ's decision to not include Ms. Bechdel's cane into the RFC assessment is based on substantial evidence.  The ALJ determined that Ms. Bechdel's cane was not medically required for her to ambulate. *Admin. Tr.* at 21. The ALJ reached this determination after considering all of the evidence, including the medical evidence and Ms. Bechdel's testimony.

The ALJ relied on Dr. Magurno's report, which concluded that Ms. Bechdel did not require the use of a cane to ambulate. *Id.*  Ms. Bechdel concedes that Dr. Magurno's report included a "check-the-box" form regarding whether she requires the use of a cane to ambulate, and that Dr. Magurno checked "No."  Additionally, the ALJ relied on the opinion of the State agency medical consultant, Dr. Chung, regarding the medical necessity of Ms. Bechdel's cane.  Dr. Chung decided to not

include any provision that Ms. Bechdel required a cane for ambulation. *Admin. Tr.* at 20-21.

The ALJ gave great weight to Dr. Magurno's and Dr. Chung's opinions that Ms. Bechdel did not require a cane to ambulate. *Id.* at 22.  Specifically, the ALJ pointed out the "longitudinal evidence of record, including Magurno's physical exam findings, support that conclusion." *Id.*  Here, the ALJ provided specific reasons why he gave great weight to Dr. Magurno's and Dr. Chung's opinions. Both medical reports concluded that Ms. Bechdel did not require a cane to ambulate.

The ALJ mentioned the prior unfavorable decision from ALJ Wing (11/20/2013), which does not include a cane provision. *Admin. Tr.* at 22.  In ALJ Wing's decision, Judge Wing cited to a July 21, 2013 examination, which showed that Ms. Bechdel was capable of walking with a symmetrical, non-antalgic gait, without the use of a cane. *Id.*  Ms. Bechdel contends that the ALJ erred in relying on the prior unfavorable decision that was seven months prior to the dates relevant to this claim.  The ALJ explained that even though ALJ Wing's decision is from approximately 7 months before Ms. Bechdel's current amended alleged onset date of June 30, 2014, it is still noteworthy since it also found that Ms. Bechdel did not medically require a cane to ambulate. *Id.*  Additionally, the ALJ noted that Ms.

17

Bechdel's condition has not declined since her hearing with ALJ Wing. *Id.*  The
ALJ adequately explained why he mentioned ALJ Wing's prior decision.

Ms. Bechdel asserts that Dr. Magurno's and Dr. Chung's opinions are
inconsistent with other substantial evidence, namely, her own testimony and
prescription of a cane to ambulate.  In her reply brief, Ms. Bechdel notes that she
testified "that she relies on the cane for leaning forward to take pressure off of her
left side when walking." *Doc. 15* at 8.  Additionally, Ms. Bechdel claims that the
ALJ failed to appreciate her prescription for a cane, which she claims is evidence
that a cane is necessary to ambulate. *Id.*  Ms. Bechdel points to an April 13, 2015
visit with her family practice office, which indicates that Ms. Bechdel was given a
prescription for a new cane. *Admin. Tr.* at 22.  Ms. Bechdel claims that a
prescription for a new cane is evidence of a medical necessity.

The ALJ did not err in deciding that a prescription for a new cane is not
equivalent to a medical necessity.  The ALJ reasoned that "[w]hile there is a
notation that a cane is being prescribed, that was because the claimant asked for it
when her old cane broke, as opposed to her doctor definitively stating that she
needs it to ambulate." *Id.* at 22.  The ALJ also relied on evidence throughout the
record that indicates that Ms. Bechdel is assisted by the cane but is capable of
ambulation without it.  Specifically, the ALJ noted that Ms. Bechdel claims to use

the cane when she is out shopping and when her back bothers her at home. *Id.* And

Ms. Bechdel testified that she can walk up to 60 feet without the cane and up to

100 feet with the cane. *Id.* at 55-56.

Ms. Bechdel claims that Dr. Magurno's report is unreliable because Dr.

Magurno only examined Ms. Bechdel on a single occasion. Additionally, Ms.

Bechdel asserts that Dr. Magurno's report is inconsistent, as it indicates Ms.

Bechdel "would be unable to walk a block at a reasonable pace on rough or uneven

surfaces." *Doc. 15* at 8. While multiple examinations may have been preferable,

the ALJ is not prohibited from relying on a consultative report based on a single

examination. *See Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991) (noting that

an ALJ is not prohibited from relying on a single state agency medical

consultation). Regarding the alleged inconsistencies in Dr. Magurno's report, the

ALJ may decide what to accept or reject from a medical report, so long as the

conclusion is based on substantial evidence. *See Bruce v. Berryhill*, No. 16-cv-629,

2017 WL 2345544 at *3 (W.D. Pa. May 30, 2017) (finding that the ALJ relied on

substantial evidence even when he chose to disregard certain elements of a medical

report).

Ms. Bechdel claims that the ALJ erred in giving any weight to Dr. Chung's

evaluation because Dr. Chung did not evaluate Ms. Bechdel in-person.

Furthermore, Ms. Bechdel claims that Dr. Chung's opinion should be afforded no weight because Dr. Chung noted that Ms. Bechdel "uses a cane only to help lean forward." *Doc. 15* at 8. Ms. Bechdel contends that this finding is inconsistent with her testimony that she uses the cane to help alleviate pressure off her left side while ambulating.

The ALJ did not err when he relied on the opinion of Dr. Chung. An ALJ may rely on a state agency medical consultation. *See Jones*, 954 F.2d at 129 (noting that the ALJ relied on substantial evidence when he relied on a state agency medical consultation). Regarding Dr. Chung's report and how it conflicts with Ms. Bechdel's testimony, the ALJ did not err by giving weight to Dr. Chung's report. The ALJ was tasked with considering all of the evidence presented, including Dr. Chung's report and Ms. Bechdel's own testimony. It is within the ALJ's authority to decide what evidence he or she relies on when making an RFC assessment. *See Velez* v. *Colvin*, No. 12-cv-7592, 2013 WL 6840515 at *10 (D.N.J. Dec. 23, 2017) ("[T]he ALJ took into account the entire record and arrived at a decision after weighing all conflicting evidence. Thus, even if this Court would have weighed the evidence differently, it cannot disturb the Commissioner's final decision on this basis.").

The Commissioner properly points out SSR 96-9p, which addresses hand-held assistive devices regarding a claimant's RFC assessment.  SSR 96-9p states:

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed….

SSR 96-9P (S.S.A.), 1996 WL 374185, at *7.

Ms. Bechdel failed to provide medical documentation that her cane was medically required for her to ambulate.  Ms. Bechdel provided evidence that her cane was prescribed, but a prescription does not indicate a medical necessity. *See Howze v. Barnhart*, 53 F.App'x 218, 222 (3d Cir. 2002) (noting that a prescription for a cane is "insufficient to support a finding that a cane was medically necessary."); *see also Rodriguez v. Comm'r of Soc. Sec.*, No. 2:16–cv–02807, 2017 WL 935442 at *7 (D.N.J. March 9, 2017) ("[A] prescription for a cane is not enough to demonstrate that the cane is medically necessary.").  Therefore, the ALJ's decision to not include the cane into Ms. Bechdel's RFC assessment was based on substantial evidence. *See Sanchez v. Colvin,* No. 1:13-cv-02479, 2014 WL 5147793 at *15 (M.D. Pa. Oct. 14, 2014) (holding that the ALJ properly excluded a cane from the claimant's RFC assessment because the cane was not medically necessary.); *see also Soto v. Comm'r of Soc. Sec.*, No. 17-cv-89, 2018 WL 355138 at *5 (D.N.J. Jan. 10, 2018) (finding that the ALJ relied on substantial

evidence when the claimant failed to demonstrate a cane was medically required,

thereby leading to its exclusion in the RFC assessment).

## VI.  Order.

Accordingly, for the foregoing reasons, **IT IS ORDERED** that the

plaintiff's request for relief is **DENIED** and the Commissioner's final decision

denying Ms. Bechdel's claims is **AFFIRMED**.  The Clerk of Court shall enter

judgment in favor of the Commissioner of Social Security and against the plaintiff.


_**S/Susan E. Schwab**_
Susan E. Schwab
Chief United States Magistrate Judge